May it please the Court, my name is Nancy Bergeson and I represent Mr. Suvia-Reyes in this appeal. This illegal reentry prosecution of Mr. Suvia-Reyes was unsupported by a removal that complied with the requirements of Mendoza-Lopez. The removal here was an expedited exclusion at the border, a unilateral executive decision to exclude him. And it was the functional equivalent of a knock at the door. Basically, you can't come in. Well, there's nothing wrong with that. I mean, Mendoza-Lopez simply indicates if you're going to try to use a prior removal order, you have to have some opportunity to get the judicial review that wasn't afforded the first time, and that's what you get. But in that circumstance, you have to show prejudice. What's the prejudice? Your Honor, there – I think there are – there is an argument that this administrative proceeding was so flawed that it simply cannot, in the first instant, pass Mendoza-Lopez. But in any event. How can that stand up under our – after our embank? I'm sorry. It begins with an M also. Morales-Izquierda. Thank you. I don't think it – there's absolutely no conflict. Morales-Izquierda is a completely different case. What it dealt with there – Morales-Izquierda essentially upheld the reinstatement procedures.  But Morales-Izquierda is a completely different case. Morales-Izquierda occurred only – was a case that was civil in nature. It had nothing to do with the criminal prosecution. And that is an absolutely paramount distinction. And I think it's why the government is able to file a brief with this Court that doesn't even mention, doesn't even so much as cite Mendoza-Lopez. Because what the government is doing, and I think the danger here, is conflating the notion, excuse me, that Congress can establish rules for arriving aliens at the border. And that's the process they get. And that's fine. Kagan-Let me come back to my question, which is really just very simple. Okay. You didn't get judicial – there was no judicial review for the removal order or the reinstatement. That's correct. All right. So in order to use the prior deportation order as an element in the criminal prosecution, there must be an opportunity to, in fact, see whether judicial review would have made any difference. So the question is, would it have made any difference? That is, was he prejudiced? Had he gotten judicial review of the expedited removal order? What are the odds that that order would have been vacated? Well, the legal standard in terms of prejudice is whether or not there was a plausible showing of potential – plausible relief. Was that available? We absolutely – And what basis is there that that expedited removal order would have been overturned? Mr. Silvia Reyes could have withdrawn his petition or application for admission. That's true. No, but he's got to show that itself was plausible, that he could have withdrawn it, right? No, he didn't – he couldn't – he didn't have a right to withdraw it. No, it's discretionary relief. But so is any relief. Exactly. It's discretionary. He has to show that it was plausible that that discretion would have been exercised in his favor. I don't know how he could possibly do that in this case. Well, by statute, it's clear he could have. Well, how? Because he is considered – No, no, no. Statute doesn't address plausibility. Statute just says it's discretionary. But it – the discretion requires its exercise. And it could have been exercised favorably in the first place. Well, could have been is not good enough. You have to show that it was plausible that it would have been exercised in his favor. I think that's what Judge Schlammer is trying to get at. And as far as I can tell, you have not made that showing yet. Well, I – Let me read you the definition of plausible. Superficially fair. It says reasonable or valuable, but often specious. Pleasing or persuasive, like a swindler. Appearing worthy of belief. I mean, do you really think that would have happened down at the border? I mean, if you look at this gentleman's history, I mean, he's been coming back and forth almost at will. So why would he not say, okay, I'll leave and I'll be back tomorrow, and you won't see me when I come back? Well, let me, as a preliminary matter, just establish very clearly our objection to the government's infusion of facts into this appeal that were not before the court at the time of the motion to dismiss. There are no less than 16 references, and Your Honor has just referenced some of that, history, in the brief. Didn't the government withdraw that? Well, they didn't do – they didn't do enough. They said we withdraw our – we're not going to rely on the addendum. And then they referenced a couple of references in the brief to a prior deportation. That's not nearly enough. I could go through those 16 references that talk about these – this continuing problem, five separate occasions of entering illegally, hiding in a trunk, submitting an altered passport. That's what happened on the – that's when he was removed. None of that was in the record. This – these are in – this is in – And the Attorney General wouldn't have known any of it, of course. Pardon me? The Attorney General wouldn't have known any of it. He would have had to withdraw his application. This is something that has to be evaluated based on evidence in the rule of law. We can't come in after the fact on appeal and infuse all of this material into the – into the record that then influences the decision. Let's try to focus in on what – on what really matters. I mean, we just get an answer to the straight question of what possible basis do you have for saying the Attorney General would have exercised his discretion in favor of your client? You have not – so far as I can tell, I haven't pointed to any cases where an application has been granted or denied, indicated that your client might plausibly come within one of those cases. I mean, you just said there's a possibility of applying to withdraw. Well, sure. I would cite to Your Honors the statute that considers my client, considered my client an applicant for admission and allows him to withdraw his application for admission. There was absolutely not one piece of evidence, not one scintilla of evidence that the government produced to rebut that. I need only show a plausible ground of relief. Once I have done that, which I did by giving this statute that provides for plausible ground for relief to the government – to the court, then the burden shifts under the law for the government to rebut that. And there is nothing of the sort. Now, we have jumped to the issue of prejudice, but please, Your Honors, look at the – at Mendoza-Lopez and what that case requires. We have completely glossed over the constitutional requirement of due process. We're now – we're taking a person who knocks at the door and there's not a bit of process that's given that human, not a bit. That person has no rights under the law, none. And then we take that procedure, that hearing, the result of that administrative process, and we use it as a conclusive element in a criminal case. That's precisely what Mendoza-Lopez prohibits. And nobody seems to be paying attention to that. The trial court didn't pay attention to that. The government completely ignores it. And now I fear that this panel is going down the same path. Mendoza-Lopez is a constitutional requirement. It is a controlling precedent. It is the driving force behind this whole notion of using these hearings as an element in a criminal case. So on the face of it, there are serious constitutional problems that have to be answered before you ever get to the issue of prejudice. So you're saying there was really a specious hearing at the border, didn't amount to a hill of beans, and you can't use that as a basis for subsequent prosecution? Yes, that's what I'm saying. Why don't you just say that? Well, I have in my brief. I've said it. It seems like I've been saying it a lot. But I mean, you're, you know. I tried. But the specious is an overstatement. There was nothing. There is no hearing. There is no hearing. There is simply an excerpt of the record 54. That is the only thing that exists to commemorate that event. And the alien doesn't sign, doesn't acknowledge, doesn't do anything. There are simply no rights, period. Do we have a family here? Your Honor, that is not in the record. There is not evidence of that. And that's my beef with what the government has done here in terms of infusing all of these other facts into the record. It's improper. And it shouldn't be countenanced by the Court. May it please the Court. My name is Amy Potter, and I represent the United States in this appeal. I want to clarify the issue with the addendum. We have withdrawn our reliance on that. However, it is inaccurate to say that all of those facts are not in the record. An excerpt of record 54, which is the determination of inadmissibility, it does reflect that on that date he was found concealed in a vehicle, that he had no legal right to enter a pass, and that he did not have any possession of entry documents. And those facts are not in the record. I understand that, Your Honor. And what Mendoza-Lopez allows is for him to collaterally attack and look at the underlying deportation and show prejudice. And he's failed to do so in this case. Well, you know, I sort of gather Ms. Bergeson's reading of Mendoza-Lopez comes very close to a reading that under Mendoza-Lopez, no showing of prejudice required. And there's nothing in Mendoza-Lopez that expressly says you can, you know, rebut the showing of lack of judicial review if there's no prejudice. Is there? Mendoza-Lopez does not explicitly state that. Right. However, the cases in this circuit after that have held that a requirement to require. But Mendoza-Lopez really doesn't make your case for you. No, and that's why we didn't rely on it. What we've relied on is the standards set forth in this Court that he has to show a due process violation and prejudice. We assert that he's failed to show either. First of all, the procedure that is at the border has been approved both by this Court and by the Fifth Circuit in a factually similar case. This is the procedure that's been set forth by Congress for people who have not yet entered the United States who appear at the border. Approved in the setting of a 1326 prosecution? The Fifth Circuit has. This Court has not. No, Your Honor, this Court has not addressed it. We have. I think it's still open in our circuit. In this circuit it is. However, I don't believe that there should be a different standard for 1326 cases from the civil cases. So in this case where the procedure has been found to comport with due process, he's failed to do so. Well, except for Mendoza. Yeah. Except for Mendoza-Lopez, which says, you know, in a criminal under 1326, I mean, you know, if there's no judicial review, it's a violation of due process, right? And what Mendoza the remedy under Mendoza-Lopez is that the defendant then gets judicial review of that underlying deportation, and that's what he's gotten here. And in this case, he has. In this case, there was judicial review? I'm sorry. The district court has reviewed it, and he has failed to show prejudice. He didn't shift the burden under the prejudice standard. So focusing more closely on the prejudice standard, all the defendant has done is cited to a statute that allows for discretionary review. And in Ars Hernandez, this Court said the alien must make a plausible showing that the facts presented would cause the attorney general to exercise his discretion. Now, it wasn't under the exact same standard, but that's what a plausible showing. A plausible showing is not simply citing to a statute that allows for discretionary review. And again, the only facts in this record are that the defendant was concealed in a vehicle and attempted to enter the United States without proper documentation and fraudulently. And in that case, there's no evidence in the record that this is a case in which the attorney general would exercise his discretion and allow him to withdraw his application. And I think the defendant needs to make a slightly greater showing of this plausibility before the burden shifts to the United States to prove that his deportation was – would not have occurred. Kagan's just a matter of curiosity. If he'd been allowed to withdraw his application, he would have still been deported. I mean, that's the whole point. You withdraw the application, it doesn't represent that you'll leave ASAP. Yes, but he wouldn't be subject to an order of excludability which could serve as a basis for a criminal prosecution in the United States. But here's my question. Under the regs, isn't any deportation treated as a – as an order of deportation if he withdrew his application? He would be able to withdraw his application, and he wouldn't be an applicant for admission, so he wouldn't be inadmissible under 1326. He wouldn't be inadmissible or subject to an order of exclusion. He wouldn't be deported, I don't believe, for under purposes of 1326. Or he could also – couldn't he possibly ask for a voluntary departure? No. Voluntary departure is once you've already entered the country and you're subject to deportation. This is the real distinction. But if he hasn't entered, he can't be deported, can he? He's excluded or removed. And in this case, he was removed. And again, Congress in 1326 made clear that it's not just in the deportation context that you can be criminally charged. It's also when you are removed, ordered excluded, or found inadmissible. So in this case, there is no reason to assume that Congress did not intend for these procedures at the border to serve as a basis for criminal prosecution. And again, the defendant has not offered any evidence that it was plausible that he is the type of alien that the Attorney General would exercise his discretion to allow him to withdraw his application. What is – I'm sorry to make you repeat, but what is in the record now about his being hidden in the trunk? You say that's still part of the record? Yes. On the excerpt of record 54, which is the determination of inadmissibility, which is the form that occurred on March 17, 2000.  ER-54. It makes clear why he is subject to removal. And one of the reasons is that he was found and sealed in a vehicle. Thank you. If the Court has no further questions, we'll submit on the briefs. Does he have a family? I am not aware of that fact, Your Honor, and it doesn't appear to be in the record. This Court in Pro Tovar, an en banc decision, said, we recognize, as did the Court, and that is the Mendoza-Lopez. You have to talk into that. See, we record everything. I'm sorry, Your Honor? We record everything.  Oh, I'm sorry. Pro Tovar, the en banc decision by this Court, said, We recognize, as did the Mendoza-Lopez Court, that there may well be times when the administrative proceedings were so flawed that effective judicial review will be foreclosed, as here. The very lack, the Court said, The very lack of appeal precludes exercise of discretion that might prevent the deportation in the first instance. Effective review is nil once deported. And that is why these procedures cannot form the basis for a criminal prosecution. Fine. We can exclude people at the border. Congress can give them no process at all, and that's a civil procedure. But that is very different from taking that, that, nothing of a result, and using it as an element in a criminal case. The government May I say one other thing in response to the government's statement about fraud? There is no evidence whatsoever of fraud in this process. This man was, if you look at the allegations in ER 54, it is under INA 212A7A1 and not A6, which deals with fraud, which deals with misrepresentation, which deals with a false claim of citizenship. So the government is being very sloppy in the arguments that it's making to you. There is no fraud here. There is every opportunity for this man to have been able to withdraw his application for admission, and the government hasn't provided you any information that would rebut that. All right? Thank you. May we submit it? All right. We'll call the next matter. Legal Aid Services of Oregon versus Legal Services. You notice as soon as you come up here, the audience just walks right out.
judges: Pregerson, Rymer, Tashima